[No. 20042.    Department One.    December 6, 1926.]

THE STATE OF WASHINGTON, *Respondent*, v. LUDWIG NELSON, *Appellant*.[1]

[1] INTOXICATING LIQUORS (28, 50)—ILLEGAL MANUFACTURE—EVIDENCE —QUESTION FOR JURY. Accused's possession of intoxicating liquor, found on a ranch, is a question for the jury, where it appears that, at the time of a search of the ranch, on which a still was found in an outbuilding, the party in charge stated that the place was rented to the accused, and a letter addressed to him and clothing and papers belonging to him were found in the house, and were removed by him a short time before his arrest.

[2] SAME (49)—POSSESSION—ADMISSIBILITY OF EVIDENCE. In a liquor prosecution, a post card and envelope addressed to the accused found in a bed room in a ranch house, offered to show his occupancy of the place, are sufficiently identified to justify their admission.

Appeal from a judgment of the superior court for Grays Harbor county, Campbell, J., entered September 18, 1925, upon a trial and conviction of being a jointist. Affirmed.

*O. M. Nelson,* for appellant.

*W. J. Murphy,* for respondent.

MAIN, J. —The defendant was charged with the unlawful manufacture of intoxicating liquor (moonshine

[1]Reported in 251 Pac. 118.

whiskey).   The trial resulted in a verdict of guilty,
and the defendant appeals.

In Grays Harbor county there is a farm or ranch,
referred to in the testimony as the Eshom place, upon
which there is a six or seven room dwelling house and
one or more out buildings.   On April 25, 1926, the
game warden and a deputy sheriff, under a search war-
rant, went to this place for the purpose of ascertaining
if a deer had been killed out of season.   While making
the search, they found in a small out building, a short
distance from the house, a still in which moonshine
whiskey was being manufactured.

Two or three days later, two deputy sheriffs with a
search warrant, went to the place for the purpose of
making a search for intoxicating liquor.   At this time,
they found that the still had been moved about two
hundred and fifty yards and concealed in the brush.
The barrels containing the mash had been dumped,
and there were fifteen gallons of moonshine whiskey in
kegs.   The defendant was arrested and charged with
the crime of operating the still.   He admitted occupy-
ing the place from the latter part of January, 1926,
until the early part of April, but denied that he had
occupied it after that time, and denied any knowledge
with reference to the still or the manufacture of moon-
shine whiskey.

[1]   The first question is, whether under the state's
evidence a question for the jury was made.   The deputy
sheriff who accompanied the game warden in search
for the deer thought to have been killed out of season
testified as follows:

"Q. Just state to the jury about that trip up there.
A. Well on Saturday evening, the 25th day of April,
Mr. Winslow came and wanted a deputy sheriff to go
with him.   He had a search warrant for the Eshom
place, to find a deer that had been killed out of season,

and so we went up there and in searching the place there was nobody home except a young man who said he was a brother of Ludwig Nelson's and he said Ludwig Nelson lived on the place and had it rented, and in searching the house we found a little building back of the house that was locked and I asked him for the key to this building, and he said that he didn't have it, so we took an ax and forced the door open and entered the building, and we saw all kinds of evidence of the manufacture of moonshine and mash. There was one fifty gallon barrel, and the boiler was full of mash and it had a cloth strainer over the top, and the barrel contained enough so that it would have been filled with what was in the boiler. Q. Who was Mr. Winslow that you went up there with? A. He is game warden. Q. And you say this barrel was nearly full of mash. A. It would have been full with what was in the boiler. That would have filled it. Q. What do you mean by mash. A. Fermented corn and barley, from which they make moonshine liquor.''

The deputy sheriffs, in making a search of the house, in a bed room up stairs found clothing belonging to the appellant and papers, some of which were in a cigar box on a stand and others on the stand beside the box. One letter and one postal card were addressed to ''Lud'' Nelson. A few days after the search, the appellant removed his effects from the place. He says that from the time he left the place in April, up to the time of the search, one Harry Minnick was in possession. No other witness testified with reference to Minnick and he was not produced upon the trial. The evidence of the officer as to a conversation with the brother of the appellant at the time of the search, went in without objection and from this, together with the other evidence in the case, it was for the jury to determine whether the place was being occupied by the appellant.

The case of *State v. Potter*, 137 Wash. 53, 241 Pac.

668, is relied upon as sustaining appellant's position that this case should have been taken from the jury. In that case the defendant was charged with the possession of a bottle of whiskey, which was found in a phonograph in the public entry or sitting room of a hotel which was open to guests who rented rooms. It was there held that there was nothing to connect the defendant with the possession of the bottle of whiskey. In this case, the jury had a right to find that the appellant was in possession of the Eshom place, and that no one else was occupying it at the time. The fact that the appellant testified that Minnick was in possession would not be controlling upon the jury.

[2] The other question is, whether the papers referred to and introduced as an exhibit were proper evidence. The purpose of offering these was to connect the appellant with the occupancy of the place. They were sufficiently identified to justify their admission in evidence. As stated, they were found in a bed room upstairs in the house, in which was some of the appellant's clothing, and on the post card and envelope was the name of the appellant.

We find no error in the record, and the judgment will be affirmed.

TOLMAN, C. J., MITCHELL, FULLERTON, and HOLCOMB, JJ., concur.